# Third District Court of Appeal

## State of Florida

Opinion filed November 6, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1268
Lower Tribunal No. 20-1014
_____

**T.I.J., a juvenile,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Orlando A. Prescott, Judge.

Carlos J. Martinez, Public Defender, and Jennifer Thornton, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Richard L. Polin, Chief Assistant Attorney General, for appellee.

Before EMAS, GORDO and GOODEN, JJ.

EMAS, J.

**INTRODUCTION**

In this appeal, T.I.J., a juvenile ("Appellant") challenges the trial court's order withholding adjudication of delinquency and placing Appellant on probation for resisting an officer without violence. Appellant contends the trial court erred by denying his motion for judgment of dismissal on that charge, asserting that the evidence was insufficient to establish that the officer was engaged in the lawful execution of a legal duty at the time he ordered Appellant to stop running away.

Upon our review of the record, we hold that the totality of the circumstances, applied as an objective standard and measured in light of the officer's training and experience, provided articulable suspicion of criminal activity. The detective's attempt to conduct an investigatory stop of Appellant was reasonable under the Fourth Amendment, and therefore the detective was engaged in the lawful execution of a legal duty at the time he ordered Appellant to stop.  Appellant's refusal to do so constituted resisting an officer without violence, and the trial court properly denied Appellant's motion for judgment of dismissal.

**FACTS AND PROCEDURAL HISTORY**

Appellant was fourteen years old at the time he was arrested and charged by delinquency petition with carrying a concealed firearm,

possession of a firearm by a minor, and resisting an officer without violence. The case proceeded to an adjudicatory hearing, and the evidence, viewed in a light most favorable to the ultimate determinations of the trial court,[1] established the following:

Detective Brandon Benavides ("Detective Benavides") of the Miami-Dade Police Department was assigned to the South District Crime Suppression Team. This suppression team is a proactive law enforcement unit that responds to crime trends within the geographical district. On August 21, 2020, Detective Benavides was driving an unmarked vehicle in an area that had recently experienced a spike in violent crime. Although he was not in uniform, he was wearing a police-issued vest with "POLICE" in large, bold letters displayed on the front and back of the vest.

Detective Benavides first observed Appellant and another male walking in the area. He noticed that Appellant matched the physical description of a suspect in a strongarm robbery that had occurred in the same location three days earlier. Detective Benavides exited his vehicle and

---

[1] See C.A. v. State, 255 So. 3d 520, 521 n. 2 (Fla. 3d DCA 2018) ("We review de novo the trial court's denial of [appellant's] motion for judgment of dismissal. Importantly, in moving for a judgment of dismissal, [appellant] 'admits all facts and evidence adduced' at the adjudicatory hearing, and 'all reasonable inferences that may be drawn from such evidence must be viewed in a light most favorable to the state.'" (quoting Espiet v. State, 797 So. 2d 598, 601 (Fla. 5th DCA 2001))).

began walking toward Appellant. After seeing Detective Benavides approaching him, Appellant began walking away. At that point, and without any action, command, or other statement by Detective Benavides, Appellant reached into the pouch pocket of his hoodie and removed a black firearm, which was contained in a soft foam holster. The firearm had been concealed from Detective Benavides' view until Appellant removed it from the pouch pocket of the hoodie. At that point, Detective Benavides told Appellant to drop the firearm. Instead, Appellant threw the firearm (still in its holster) into the air and began to run away from Detective Benavides.

Detective Benavides gave chase, ordering Appellant to stop. Appellant refused to comply with the order to stop. Detective Benavides eventually caught Appellant a few blocks away, in the backyard of a residence. A marked unit responded to the scene and Appellant was transported to the station. Another officer retrieved and impounded the firearm discarded by Appellant.

At the station, Detective Benavides reviewed the Miranda rights waiver form with Appellant. Appellant initialed the form, indicated he was willing to answer questions, and admitted he had the firearm in his possession. Detective Benavides questioned Appellant how he came into possession of the firearm. Appellant told Detective Benavides that he had seen somebody

4

throw the firearm into some bushes a few days earlier. Appellant said that he returned to the bushes, located the firearm, placed it in his jacket pocket and was walking to a friend's house when Detective Benavides approached him.

At the close of the State's case, the defense moved for judgment of dismissal on all three charges. The trial court (for reasons not relevant to this appeal) granted defense counsel's motion for judgment of dismissal as to the charges of carrying a concealed firearm and possession of a firearm by a minor, but denied the motion as to the remaining count of resisting an officer without violence. Appellant presented no testimony or other evidence at the trial and, at the close of all the evidence, renewed his motion for judgment of dismissal[2] as to the charge of resisting an officer without

---

[2] Florida Rule of Juvenile Procedure 8.110(f) provides:

> **(f) Motion for Judgment of Dismissal.** If, at the close of the evidence for the petitioner or at the close of all the evidence in the cause, the court is of the opinion that the evidence is insufficient to establish a prima facie case of guilt against the child, it may, or on the motion of the state attorney or the child shall, enter an order dismissing the petition for insufficiency of the evidence. A motion for judgment of dismissal is not waived by subsequent introduction of evidence on behalf of the child. The motion must fully set forth the grounds on which it is based.

violence. The trial court denied the motion, withheld adjudication, and placed Appellant on probation. This appeal followed.

## STANDARD OF REVIEW

Our standard of review of a motion for judgment of dismissal in a juvenile case is "the same standard that applies to a motion for judgment of acquittal in a criminal case." P.N. v. State, 976 So. 2d 90, 91 (Fla. 3d DCA 2008) (quoting A.P.R. v. State, 894 So. 2d 282, 284 (Fla. 5th DCA 2005)). Thus, in reviewing a trial court's denial of a motion for judgment of dismissal, a de novo standard of review applies. Id. While the evidence must be viewed in the light most favorable to the State, if the State fails to present sufficient evidence to establish a prima facie case of the crime charged, then a judgment of dismissal is proper. E.A.B. v. State, 851 So. 2d 308, 310 (Fla. 2d DCA 2003).

## ANALYSIS AND DISCUSSION

To establish the offense of resisting an officer without violence, "the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the actions of the defendant obstructed, resisted, or opposed the officer in the performance of that legal duty." S.L. v. State, 96 So. 3d 1080, 1085 (Fla. 3d DCA 2012); see also § 843.02, Fla. Stat. (2020) (providing: "Whoever shall resist, obstruct, or oppose any officer . . . in the

6

lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . .")

In this case, Appellant's argument focuses on the first element of the offense of resisting an officer without violence: whether the officer was engaged in the lawful execution of a legal duty at the time that he ordered Appellant to stop running. Under the Fourth Amendment,[3] "an officer may reasonably detain a person only if he or she has a well-founded, articulable suspicion that the individual is engaged in criminal activity." Hill v. State, 39 So. 3d 437, 439 (Fla. 3d DCA 2010). Thus, the question is whether, under the circumstances, Detective Benavides had the requisite articulable suspicion to justify a temporary, investigatory stop, and was thus in the "lawful execution of a legal duty" when he ordered Appellant to stop. As we held in M.J. v. State, 67 So. 3d 1189, 1190-91 (Fla. 3d DCA 2011):

> The element of lawful execution of a legal duty is satisfied if an officer has either a founded suspicion to stop the person or probable cause to make a warrantless arrest. A stop is justified

---

[3] The Florida Constitution contains its own provision protecting against unreasonable searches and seizures. See Art. I, § 12, Fla. Const. (providing in part: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures . . . shall not be violated."). However, that provision also contains a conformity clause, which provides: "This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court."

7

when an officer observes facts giving rise to a reasonable suspicion that criminal activity has occurred or is about to occur. Whether an officer's suspicion is reasonable must be determined from the totality of the circumstances existing at the time of the investigative stop, based on the facts known to the officer before the stop.

(citing C.E.L. v. State, 24 So. 3d 1181, 1186 (Fla. 2009) (additional citations omitted)).

Appellant argues the trial court erred in denying his motion for judgment of dismissal, contending that stopping a person solely for possession of a concealed firearm violates the Fourth Amendment. In support of this argument, Appellant relies on 1) Kilburn v. State, 297 So. 3d 671, 675 (Fla. 1st DCA 2020), which held that a "law enforcement officer may not use the presence of a concealed weapon as the sole basis for seizing an individual"; 2) Burnett v. State, 246 So. 3d 516, 518 (Fla. 5th DCA 2018), which held that "carrying a concealed firearm is not sufficient, without more, to justify a *Terry* stop"; and 3) Regalado v. State, 25 So. 3d 600 (Fla. 4th DCA 2009), which held that there was no reasonable suspicion for a temporary detention based solely on the observation of a concealed firearm, where the officer did not observe any criminal behavior or threatening acts and had no information of any suspicious activity.

Appellant contends that because there was no articulable suspicion for the stop, he had the legal right to walk (or run) away from the officer. We

8

certainly agree with the proposition that, when Detective Benavides first began approaching Appellant to speak with him, it was merely a consensual encounter which does not implicate the Fourth Amendment, and Appellant was within his rights to walk away. See Florida v. Bostick, 501 U.S. 429, 434 (1991) ("Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." (citing California v. Hodari D., 499 U.S. 621, 628 (1991))); see also State v. Reyes, 4 So. 3d 46, 48 (Fla. 3d DCA 2009) (explaining a consensual encounter involves minimal police contact during which a citizen may either comply with an officer's requests or ignore them, and which do not invoke constitutional safeguards). "Where an officer has no basis to detain an individual, the individual's action in ignoring an officer's command to stop cannot constitute resisting arrest." F.B. v. State, 605 So. 2d 578, 579 (Fla. 3d DCA 1992).

Relying upon these legal principles, Appellant contends the State failed to prove Detective Benavides was engaged in the lawful execution of a legal duty when he ordered Appellant to stop based on the mere observation of a

9

firearm in Appellant's possession. It is here Appellant's argument falters, because it is based on a faulty factual premise: Detective Benavides' actions were not based solely on observing Appellant in possession of a concealed firearm, but rather upon the totality of the circumstances at the time he ordered Appellant to stop.

The "totality of the circumstances" analysis is an objective one, and "a determination of reasonable, articulable suspicion is to be based on 'commonsense judgments and inferences about human behavior.'" Mackey v. State, 124 So. 3d 176, 183 (Fla. 2013) (quoting Illinois v. Wardlow, 528 U.S. 119, 125 (2000); see also Hernandez v. State, 784 So. 2d 1124, 1128 (Fla. 3d DCA 1999) (underscoring that a court is not bound by the officer's subjective intent or motivation on the issue of probable cause or reasonable suspicion, but rather the court must apply an objective standard to determine the existence of probable cause or reasonable suspicion). "As a matter of fact, even conduct consistent with innocent activity can give rise to a reasonable suspicion in support of a *Terry*-stop when all the circumstances are taken into consideration." State v. Cruse, 121 So. 3d 91, 97 (Fla. 3d DCA 2013). "Thus, the police officer's suspicions need not be inconsistent with a hypothesis of innocence. Rather, they need to be based only on rational inferences, from articulable facts, which reasonably suggest criminal

10

activity." State v. Johnson, 516 So. 2d 1015, 1021 (Fla. 5th DCA 1987); see also R.A. v. State, 355 So. 3d 1028, 1034 (Fla. 3d DCA 2023) ("Whether a suspicion is 'reasonable' will depend on the existence of 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968))). "In determining whether a police officer possesses a reasonable suspicion to justify an investigatory stop, the court must consider the totality of the circumstances viewed in light of a police officer's experience and background." State v. Lennon, 963 So. 2d 765, 768 (Fla. 3d DCA 2007). "'Reasonable suspicion' is a less demanding standard than that for probable cause, and 'considerably less than proof of wrongdoing by preponderance of the evidence.'" State v. Gonzalez, 682 So. 2d 1168, 1170 (Fla. 3d DCA 1996) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

As the trial court correctly pointed out, Detective Benavides did not order Appellant to stop until he observed Appellant remove the concealed firearm from inside the pocket of his hoodie, throw it into the air and start to run away. Only then did Detective Benavides command Appellant to stop. Appellant refused to comply and continued to run away, and it is these actions which constituted resisting an officer without violence. These actions, combined with the detective's knowledge that Appellant matched the

11

physical description of a suspect in a strongarm robbery that had occurred in the same location three days earlier, provided a well-founded, articulable suspicion for a temporary, investigatory stop, and thus Detective Benavides was engaged in the lawful execution of a legal duty when he ordered Appellant to stop running. See Reyes, 4 So. 3d at 48-49; see also R.R. v. State, 137 So. 3d 535, 537 (Fla. 4th DCA 2014) ("An officer's command to stop is a lawful execution of a legal duty if there is reasonable suspicion to support the stop." (quoting Palmer v. State, 112 So. 3d 606, 607 (Fla. 4th DCA 2013) (citing C.E.L., 24 So. 3d at 1186))).

## CONCLUSION

Under the totality of the circumstances, applied as an objective standard, and in light of the law enforcement officer's training and experience, we hold the trial court correctly determined Detective Benavides had an articulable suspicion of criminal activity and that his attempt to conduct an investigatory stop of Appellant was reasonable under the Fourth Amendment. Detective Benavides was thus engaged in the lawful execution of a legal duty at the time he ordered Appellant to stop. Appellant's refusal to do so constituted resisting an officer without violence, and the trial court properly denied Appellant's motion for judgment and dismissal.

Affirmed.